UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JAIRUS COLLINS,                                              PETITIONER

V.                                      CIVIL ACTION NO. 2:18-CV-46-TBM-RPM

COMM'R, MISS. DEPT. OF
CORR.,                                                      RESPONDENT

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On January 11, 2018, petitioner Jairus Collins ("Collins") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 ("Section 2254"), seeking for his state court felon-in-possession conviction to be set aside, his sentence vacated, and the charge dismissed. Doc. [1, 3]. Collins contends that he is unlawfully confined because his conviction and sentence were imposed in violation of the U.S. Constitution and laws of the United States. Doc. [3], at 1.

### II.    PROCEDURAL HISTORY

On December 14, 2011, Collins was arrested on suspicion of murder and being a felon in possession of a firearm. *See*, *e.g.*, Doc. [9], Ex. 6, at 17–18. On November 14, 2012, Collins was indicted on two counts: (i) first-degree murder, Miss. Code Ann. § 97–3–19(1)(A), and (ii) as a felon in possession of a firearm, Miss. Code Ann. § 97–37–5(1). *Id.*, Ex. 1, at 14–15. He was also indicted as a habitual offender, Miss. Code Ann. § 99–19–83. *Ibid.* Shortly thereafter, Collins moved to sever the counts on the grounds that his murder case could be prejudiced by the introduction of his felony record at that trial. *Id.*, Ex. 1, at 16–17. On December 12, 2012, the state trial court granted Collins' motion and severed the charges, ordering that Collins be tried separately on each one. *Id.*, Ex. 1, at 19.

1

On March 26, 2013, Collins was brought to trial on the murder charge. Doc. [9], Ex. 1, at 20–21. On March 27, 2013, a jury found Collins to be guilty of first-degree murder. *Ibid.* Thereafter, the trial judge sentenced Collins as a habitual offender to life imprisonment without the possibility of parole. *Id.*, Ex. 1, at 20–21. On April 1, 2013, Collins' final judgment of conviction was entered. *Ibid.* Thereafter, Collins directly appealed. *Id.*, Ex. 1, at 96–100. The Mississippi Court of Appeals denied his appeal as well as his motion for a rehearing. *Collins v. State*, 172 So.3d 813 (Miss. Ct. App. 2014). Collins then filed a timely petition for a writ of *certiorari* with the Mississippi Supreme Court, which granted his petition. *Collins v. State*, 160 So.3d 704 (Miss. 2015). On August 20, 2015, the Mississippi Supreme Court reversed Collins' murder conviction. *See Collins v. State*, 172 So.3d 724 (Miss. 2015).[1]

On September 16, 2015, the State filed a request with the state trial court for Collins to be brought to trial on the still-pending felon-in-possession charge alone. Doc. [9], Ex. 1, at 23. On October 5, 2015, Collins was given a trial date of February 23, 2016. *Id.*, Ex. 1, at 26. Shortly thereafter, on October 15, 2015, Collins moved to dismiss the felon-in-possession charge on speedy trial grounds. *Id.*, Ex. 1, at 28–30, 35. On November 9, 2015, the state trial court denied his motion. *Ibid.* On February 23, 2016, Collins was brought to trial on the felon-in-possession charge. *See, e.g., id.*, Ex. 1, at 87–88. On February 25, 2016, a jury found Collins guilty of being a felon in possession of a firearm. *Ibid.* The trial judge sentenced Collins as a habitual offender to life imprisonment without the possibility of parole. *Id.*, Ex. 1, at 20–21. On that same date, Collins' final judgment of conviction was entered. *Id.*, Ex. 1, at 87–88. Thereafter, Collins directly appealed. *Id.*, Ex. 5, at 17–41. On August 29, 2017, the Mississippi Court of Appeals denied his

---

[1] The State elected to retry Collins on the murder charge. Doc. [3], at 13–14. On May 11, 2016, Collins was once again convicted of murder. *Ibid.* The Mississippi Court of Appeals denied Collins' direct appeal and motion for rehearing. *See Collins v. State*, No. 2016–KA–01002–COA, 2016 WL 10515862 (Miss. Ct. App. May 12, 2016). The Mississippi Supreme Court denied his petition for a writ of *certiorari*. *See Collins v. State*, 250 So.3d 1267 (Miss. 2018). Collins is currently seeking separate federal habeas relief in connection with that charge. *See Collins v. Hall*, Civil No. 2:18–CV–219–TBM–LGI (S.D. Miss. Dec. 18, 2018).

appeal as well as his motion for a rehearing. *Collins v. State*, 232 So.3d 739 (Miss. Ct. App. 2017). On October 26, 2017, the Mississippi Supreme Court summarily denied his *certiorari* petition. Doc. [9], Ex. 5, at 3. Subsequently, on December 7, 2017, Collins filed an application for leave to move for postconviction relief in state trial court ("PCR application") with the Mississippi Supreme Court. *Id.*, Ex. 6, at 5–14. On February 15, 2018, the Court summarily denied Collins's application on the grounds that Collins raised the same issues on direct appeal and did not present arguments with "sufficient merit" to warrant an evidentiary hearing. *Id.*, Ex. 6, at 2–3.

On March 27, 2018, Collins filed the instant federal habeas petition. Doc. [1]. Collins raises four claims before this Court. Doc. [1, 3]. He claims that (i) the Mississippi state courts have unconstitutionally interpreted Miss. Code Ann. § 99–17–1 in such a way as to violate his Sixth Amendment speedy trial right, Doc. [3], at 3–7; (ii) the State's delay in bringing him to trial violated his Sixth Amendment speedy trial right, *id.*, at 7–10; (iii) his conviction is against the great weight of the evidence, *id.*, at 10–12; and (iv) his sentence as a habitual offender is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *id.*, at 12–13.

### III.   FACTS

In November 2011, Jessie Miles, Jr. ("Miles") began to experience issues with his semiautomatic .40 Hi-Point handgun, Serial No. 778606 ("Hi-Point gun"). Doc. [9], Ex. 3 (Byrd T.112, 117); (Miles T. 119–20). In particular, two bullets would occasionally enter the chamber simultaneously and prevent the gun from firing. *Id.*, Ex. 3 (Miles T. 120–21). As such, Miles sought to have his gun repaired. *Id.*, Ex. 3 (Miles T. 119–20). According to Miles, he spoke to Joshia Collins ("Joshia") about repairs. *Ibid.* Joshia informed Miles that his brother, petitioner Collins, could repair the firearm. *Id.*, Ex. 3 (Miles T. 120). In late November 2011, Miles spoke

with Collins, who agreed to fix the firearm. *Ibid.* Thereafter, Miles personally gave the Hi-Point gun to Collins. *Id.*, Ex. 3 (Miles T. 120, 128).

In his testimony, Joshia told a very different story. First, Joshia denied speaking with Miles about the Hi-Point gun, though he conceded to knowing Miles. Doc. [9], Ex. 3 (Jo. Collins T. 152–53). He further denied speaking with Miles about Collins' ability to fix the gun and, in fact, "seriously doubted" that Collins could fix the gun because he was unable to "sit still." *Id.*, Ex. 3 (Jo. Collins T. 152). He also denied seeing a gun, let alone the Hi-Point gun, in Collins' possession between December 7, 2011 and December 11, 2011. *Ibid.*

Nevertheless, Joshia conceded that he was with Collins on a date between December 7, 2011 and December 11, 2011. Doc. [9], Ex. 3 (Jo. Collins T. 141). On that date, Joshia agreed to drive Collins to "dispose of a bag," though he was not knowledgeable about the bag's contents. *Id.*, Ex. 3 (Jo. Collins T. 143). In turn, the brothers got into a Dodge Caravan ("Dodge") and began to drive around; the bag was also in the Dodge. *Ibid.* Before disposing of the bag, Collins and Joshia stopped at their father's, Melven Collins ("Melven"), house in Hattiesburg, MS. *Id.*, Ex. 3 (M. Collins T. 132). Upon meeting the brothers outside, Melven spotted the bag laying on the backseat of the Dodge. *Id.*, Ex. 3 (M. Collins T. 133).  He picked up the bag and noticed that it had "weight." *Id.*, Ex. 3 (M. Collins T. 135). While he was unsure what was inside, Melven's "paternalistic instinct" caused an "alarm" to go off "inside [him]." *Id.*, Ex. 3 (M. Collins T. 133–34). After feeling the bag, Melven lectured his kids and told them to "get away" from his house. *Id.*, Ex. 3 (M. Collins T. 132, 135). The brothers left.

Thereafter, the brothers drove northbound on I–59 with "no specific destination" in mind. Doc. [9], Ex. 3 (Jo. Collins T. 147). Stopping off near the Vossburg, MS exit, Collins left the Dodge and then returned to the vehicle after a brief time; the brothers then drove off. *Id.*, Ex. 3

(Jo. Collins T. 145–46). Days later, Detective Brandon McLemore ("McLemore") and other Hattiesburg Police Department ("HPD") officers accompanied Joshia to the same grassy area near the Vossburg exit. *Id.*, Ex. 3 (Jo. Collins T. 148); (McLemore T. 157).[2] Upon arrival, Joshia indicated that the bag was located along a nearby wood line. *Id.*, Ex. 3 (McLemore T. 157–58). McLemore found a brown bag along the wood line containing a firearm with the serial number scratched off. *Id.*, Ex. 3 (McLemore T. 161).

The firearm was then sent to the Mississippi Crime Laboratory. *See, e.g.*, Doc. [9], Ex. 3 (McLemore T. 163). HPD investigator Jeff Byrd was able to determine that the serial number was 778606, which he traced to the registered owner of the gun, Miles. *Id.*, Ex. 3 (Byrd T. 116–17). The State's firearms expert, Lori Beall, testified at trial that she was able to test fire the Hi-Point gun four times in a row without issue and that she did not believe the firearm was fixed or otherwise modified. *Id.*, Ex. 3 (Beall T. 170–72). No fingerprints were found on the Hi-Point gun. *Id.*, Ex. 3 (McLemore T. 165).[3]

## IV.    <u>STANDARD OF REVIEW</u>

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court is required to apply the standard of review set forth in Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), to all claims "adjudicated on the merits" in state court. *See* 28 U.S.C. § 2254(d). If the adjudicated state court claim is a pure question of law or a mixed question of law and fact, the Court defers to the state court decision unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(2).

---

[2] It was McLemore's understanding that the purpose of this trip was to recover the bag. Doc. [9], Ex. 3 (McLemore T. 158, 164).
[3] Before trial, the parties stipulated that Collins was a convicted felon. Doc. [9], Ex. 2 (T. 104); Ex. 4, at 68.

Section 2254(d)(1)'s "'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Poree v. Collins*, 866 F.3d 235, 246 (5th Cir. 2017) (quotation omitted). "[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme] Court's cases can supply such law." *Id.* (quotation omitted). The "'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citation omitted). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Richardson v. Quarterman*, 537 F.3d 466, 472–73 (5th Cir. 2008) (quotation omitted). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] petitioner's case." *Id.* at 473 (quotation omitted). When determining whether a decision is objectively unreasonable, the Court considers whether the decision is "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014) (quotation omitted).

Under Section 2254(d)(2), a state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, "a state-court factual determination is not

unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir. 2013) (quotation omitted). Instead, the presumed correctness of the state court's factual findings can only be rebutted by clear and convincing evidence. *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (quotation omitted).

## V.    ANALYSIS

### A.  Exhaustion of State Remedies

#### i.  Introduction

At the threshold, the Court addresses whether Collins "fairly presented" his first federal habeas claim in state court. In this claim, Collins argues that the Mississippi Supreme Court's interpretation of the state speedy trial statute, Miss. Code Ann. § 99–17–1, unconstitutionally infringes on his Sixth Amendment speedy trial right, as recognized in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Doc. [3], at 3–7. In particular, Collins argues, the Mississippi Supreme Court's interpretation of Miss. Code Ann. § 99–17–1, in *Walton v. State*, 678 So.2d 645 (Miss. 1996) and its progeny, has resulted in a statutory test ("*Walton* test") that is "stricter" and "more draconian" than *Barker*'s four-factor balancing test. *Id.*, at 5.[4] Collins identifies two ways in which the *Walton* test allegedly violates his Sixth Amendment speedy trial right: (i) the *Walton* test requires every defendant raising a statutory speedy trial claim to demonstrate prejudice to his defense in order to receive statutory relief, and (ii) a state defendant waives his statutory claim if he does not raise it in a timely manner before trial. *Id.*, at 6–7. For these reasons, Collins concludes, the Mississippi state courts have "distorted" the statute in such a way that violates his Sixth Amendment speedy trial right. *Id.*, at 7.

---

[4] Collins also identifies four Mississippi Court of Appeals decisions from the early 2000s that rely on *Walton*. Doc. [3], at 6.

### ii. Law

Before seeking federal habeas relief, a petitioner must present his claims in state court. 28 U.S.C. § 2254(b)(1), (c). In doing so, the petitioner must invoke "one complete round" of the state's "established appellate review process" before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The petitioner's "full round" of state review may take one of two forms. The petitioner may directly appeal through the State's "normal, simple, and established" appellate procedure. *Ibid.* Alternatively, the petitioner may collaterally attack his conviction via a proper application for postconviction relief. *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005).

In addition to appealing his conviction, however, a petitioner must "fairly present" his federal claims in state court before seeking federal habeas review of those same claims. *O'Sullivan*, 526 U.S. at 844, 119 S.Ct. 1728. When considering whether a federal habeas claim was fairly presented in state court, the Court looks to whether the petitioner fairly presented the "substance" of that claim to the state courts, *Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), in his petition, brief, or "similar document," *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). As such, the state courts must have been presented with the "same facts and legal theory upon which the petitioner bases his current assertions." *Ruiz v. Quarterman*, 460 F.3d 638, 642–43 (5th Cir. 2006) (citation omitted). In turn, a petitioner cannot argue from "[v]ague or fleeting references to principles of constitutional law" in his state-court claims or the fact that he made a "'somewhat similar state-law claim'" below. *Canales v. Stephens*, 765 F.3d 551, 577 (5th Cir. 2014) (citations omitted). Finally, when considering whether a claim was fairly presented in state court, the Court cannot rely on the benefit of hindsight. *See*, *e.g.*, *Anderson v.*

*Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (holding that mere existence of facts in state-court record that support appeal does not constitute fair presentation).

With these principles in mind, the Court turns to the facts of this case.

### ii. Application

Here, Collins challenged his conviction on both direct and collateral appeal in state court. Since Collins raised similar but not identical claims in these appeals, the Court addresses each appeal separately. *See* Doc. [9], Ex. 5, at 4–40 (direct appeal); Ex. 6, at 4–44 (collateral appeal).

In his *certiorari* petition on direct appeal, Collins claimed, in relevant part,[5] that the State's delay in bringing him to trial on his felon-in-possession charge resulted in a violation of his statutory speedy trial right under a proper interpretation of Miss. Code Ann. § 99–17–1. *Id.*, Ex. 5, at 11–13, 28–36. In support, Collins argued that the Mississippi Supreme Court should overrule *Walton* and its progeny for the reasons identified by Justice Dickinson in his dissent in *McBride v. State*, 61 So.3d 138 (Miss. 2011). *Id.*, Ex. 5, at 12. Likewise, Collins argued that the Court should overrule *Walton* and its progeny because these cases merely engrafted the third and fourth *Barker* factors onto Miss. Code Ann. § 99–17–1, which rendered the statute a "nullity" that is "no different" than the Sixth Amendment speedy trial right. *Id.*, Ex. 5, at 13.

Here, Collins failed to alert the Mississippi Supreme Court on direct appeal to his first federal habeas claim. First, and foremost, Collins failed to state that the *Walton* test was an *unconstitutional* interpretation of Miss. Code Ann. § 99–17–1 under the Sixth Amendment anywhere in his *certiorari* petition. Furthermore, while Collins' argument relied heavily on Justice Dickinson's *McBride* dissent, Justice Dickinson primarily argued that the *Walton* test violated

---

[5] In his petition, Collins also raised the Sixth Amendment speedy trial, weight of the evidence, and *Apprendi* claims currently before this Court. *Id.*, Ex. 5, at 13, 36–39. After reviewing the petition, the Court concluded that these claims had no bearing on its present analysis.

basic principles of statutory interpretation and, in any case, did *not* suggest that the Mississippi Supreme Court's interpretation of Miss. Code Ann. § 99–17–1 was unconstitutional under the Sixth Amendment. *McBride*, 61 So.3d at 153–56. Finally, Collins' argument that the *Walton* test resulted in an analysis *no different* than the *Barker* factors not only failed to put the Mississippi Supreme Court on notice about his first federal habeas claim, it also demonstrated that Collins was not claiming that the *Walton* test provided less protection than the Sixth Amendment. Doc. [9], Ex. 5, at 13. Ultimately, Collins' claim on direct appeal failed to alert the state courts to the same legal theory that underlies his present claim. *Ruiz*, 460 F.3d at 642–43.

Next, the Court turns to Collins' collateral appeal. Doc. [9], Ex. 6, at 4–44. In that appeal, Collins first claimed that the Mississippi Supreme Court would be violating his "due process" rights under, *inter alia*, the U.S. Constitution if his statutory speedy trial right was not vindicated by that Court. *Id.*, Ex. 6, at 8, 17. Second, Collins encouraged the Court to overrule *Walton* and its progeny for the reasons identified by Justice Dickinson in his *McBride* dissent. *Id.*, Ex. 6, at 19–20. Finally, Collins argued that his statutory and constitutional speedy trial rights would remain "uncertain" and "blurred" until *Walton* was overruled. *Id.*, Ex. 6, at 20.[6]

Here, Collins also failed to "fairly present" his first federal habeas claim on collateral appeal. First, while he did suggest that the *Walton* test "blurred" the line between Miss. Code Ann. § 99–17–1 and the *Barker* factors, Collins failed to elaborate in any detail how the *Walton* test infringed upon his Sixth Amendment speedy trial right. Doc. [9], Ex. 6, at 21. Instead, Collins merely discussed a Mississippi Supreme Court case, *Rowsey v. State*, 188 So.3d 486, 492–96 (Miss. 2015), that, in relevant part, involved a straightforward analysis of the *Barker* factors and addressed the

---

[6] On collateral appeal, Collins did not raise a Sixth Amendment speedy trial claim. Doc. [9], Ex. 6, at 37–39. However, Collins once again raised his weight of the evidence and *Apprendi* claims. *Id.*, Ex. 6, at 4–15. After the Court's review of the claims, they have no bearing on its present analysis. *Ibid.* Furthermore, Collins' statutory speedy trial right argument made before the Mississippi Court of Appeals is very similar to the one in his PCR application. *Compare id.*, Ex. 5, at 28–33, *with id.*, Ex. 6, at 18–21.

*Walton* test solely under its "good faith" exception. *Ibid.* Self-evidently, the *Rowsey* Court's discussion has no bearing on the question of whether Miss. Code Ann. § 99–17–1, as interpreted, is constitutional under the Sixth Amendment. Furthermore, Collins' argument that he needed the Mississippi Supreme Court to grant him relief under Miss. Code Ann. § 99–17–1 because he was "unlikely to prevail" on his Sixth Amendment speedy trial claim is a very different legal theory than the argument that Miss. Code Ann. § 99–17–1, as interpreted, violated his Sixth Amendment speedy trial right. *Ruiz*, 460 F.3d at 642–43.

Finally, the Court pays special attention to Collins' reference to his due process rights, Doc. [9], Ex. 6, at 8, 17, which forms the principal basis of his exhaustion argument here, Doc. [10], at 1. In his rebuttal, Collins claims that he has "maintained that it is a fundamental due process/liberty issue . . . to engraft by judicial decision or judicial fiat requirements that Petitioner assert the right to a speedy trial and show prejudice, when these conditions do not appear in the statute and are applied in the manner that is more stringent and rigid than the factors set forth than the United States Supreme Court in *Barker*[.]" *Id.*, at 1–2. This assertion is incorrect.

First, Collins once again failed to state that the *Walton* test was an unconstitutional interpretation of Miss. Code Ann. § 99–17–1 under the Sixth Amendment anywhere in his PCR application. Second, Collins only makes fleeting references to a "fundamental due process/liberty issue" in two short introductory paragraphs in that application. Doc. [9], Ex. 6, at 8, 17. These paragraphs were neither listed as arguments nor substantively included in the argument section of his proposed motion. *Id.*, Ex. 6, at 18–23. Moreover, these paragraphs do not elaborate in *any* detail about how the *Walton* test violated his due process rights. *Id.*, Ex. 6, at 8, 17. Instead, in these paragraphs, Collins relied on principles of statutory interpretation and tacked on vague, generalized references to "fundamental due process." *Ibid.* In any case, a due process claim

involves a strain of constitutional doctrine that is quite distinct from a Sixth Amendment speedy trial claim. *Compare Washington v. Glucksberg*, 521 U.S. 702, 719–20, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), *with Barker*, 407 U.S. at 530, 92 S.Ct. 2182. Relatedly, Collins failed to specify that his *Sixth Amendment speedy trial right* was implicated by the *Walton* test in making these brief statements. To the contrary, in a nearby paragraph, Collins went so far as to say that he was unlikely to succeed under the *Barker* factors and needed greater protection under the state statute. Doc. [9], Ex. 6, at 9. Finally, in his amended petition, Collins appears to concede that he did not raise his first federal habeas claim in his PCR application. Doc. [3], at 2–3. Ultimately, Collins failed to set forth the legal theory that underlies his first federal habeas claim on collateral appeal. *Ruiz*, 460 F.3d at 642–43. At best, Collins made "[v]ague or fleeting references to [a] principle[] of constitutional law[,]" not a "fair presentation" of his claim. *Canales*, 765 F.3d at 577 (citations omitted). This is simply not enough. *Ibid.*

For these reasons, Collins did not exhaust his state remedies in connection with his first federal habeas claim.

### B.  Constitutionality of Miss. Code Ann. § 99–17–1 As Interpreted

#### i.  Introduction

Even assuming *arguendo* that Collins exhausted his first federal habeas claim, the claim still fails. 28 U.S.C. § 2254(b)(2). In full, Miss. Code Ann. § 99–17–1 states:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
>
> [Miss. Code Ann. § 99–17–1.]

The present dispute does not turn on the statutory text. The parties agree that Miss. Code Ann. § 99–17–1 is facially constitutional. Instead, the dispute centers on whether the Mississippi state

courts have interpreted the statute in an unconstitutional manner through *Walton* and its progeny. Doc. [3], at 3–7. Since the Mississippi state courts did not address this claim, the Court's review is *de novo*. *See*, *e.g.*, *Peek v. Tanner*, No. CV 18–604, 2019 WL 2423230, at *2 (E.D. La. June 10, 2019).

### ii. The *Walton* Test

The *Walton* test is good law in Mississippi today, though it has been refined since *Walton* itself was decided in 1996. *See*, *e.g.*, *Perry v. State*, 233 So.3d 750, 759–60 (Miss. 2017). The *Walton* test operates as follows. First, a reviewing court must calculate whether more than 270 days elapsed between the defendant's arraignment and trial. *Walker v. State*, 196 So.3d 978, 982 (Miss. Ct. App. 2015). If the court concludes that less than 270 counted days accrued between arraignment and trial, then the defendant's statutory speedy trial right was not violated and the analysis is terminated. *Sharp v. State*, 786 So.2d 372, 379–80 (Miss. 2001). On the other hand, if more than 270 days elapsed, the defendant must then demonstrate that his defense was actually prejudiced by the delay to be entitled to relief. *McBride*, 61 So.3d at 148. Finally, a statutory speedy trial claim is deemed waived if it is not raised in a timely manner prior to trial. *Ibid.* Now, the Court turns to the Sixth Amendment speedy trial right.

### iii. The Sixth Amendment Speedy Trial Right

The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. U.S. Const. amend. VI; *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The Speedy Trial Clause of the Sixth Amendment guarantees defendants the minimum speedy-trial protection tolerable under the U.S. Constitution. *Barker*, 407 U.S. at 523, 92 S.Ct. 2182. In analyzing whether a defendant's Sixth Amendment speedy trial right has been violated, the Court applies the balancing test that was first

put forth by the U.S. Supreme Court in *Barker*. *Boyer v. Vannoy*, 863 F.3d 428, 442 (5th Cir. 2017). Under *Barker*, the Court considers four factors: (i) the "length of delay;" (ii) the "reason for the delay;" (iii) the "defendant's assertion of his right;" and (iv) the "prejudice to the defendant." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. No factor is "a necessary or sufficient condition to the finding of a deprivation of the right." *Id.* at 533, 92 S.Ct. 2182. Instead, the above-mentioned factors are related and "must be considered together with such other circumstances as may be relevant." *Ibid.* Ultimately, the *Barker* factors have no "talismanic qualities," review of these factors occurs on an "ad hoc" basis, and the court must undertake a "difficult and sensitive balancing process." *Ibid.*

In undertaking this analysis, a reviewing court first determines whether the length of delay is sufficient to warrant a "full" Sixth Amendment speedy trial test. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. If a full test is appropriate, the reviewing court considers the first three factors individually and then considers whether those factors, collectively, weigh sufficiently "heavily" in the petitioner's favor and entitle him to a presumption that he met the fourth *Barker* factor, prejudice. *Doggett v. United States*, 505 U.S. 647, 658, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Likewise, a length of delay greater than five years entitles the defendant to a presumption of prejudice. *See*, *e.g.*, *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) (collecting cases). If a presumption of prejudice is appropriate, then the petitioner is relieved of the burden of proving prejudice. *Id.* at 230–31. Nevertheless, the respondent may still prevail if the presumption of prejudice is "extenuated" or "persuasively rebutted." *Doggett*, 505 U.S. at 658, 112 S.Ct. 2686. If the petitioner is not entitled to a presumption of prejudice, he must make a particularized showing of prejudice. *See*, *e.g.*, *Goodrum v. Quarterman*, 547 F.3d 249, 260–61 (5th Cir. 2008).

### iv.    *Walton*, Its Progeny, and the Sixth Amendment

Viewing the *Walton* test and *Barker* factors side-by-side, the Court is concerned about ambiguity in the relationship between Miss. Code. Ann. § 99–17–1, as interpreted, and the Sixth Amendment. For one, under the *Walton* test, every defendant invoking Miss. Code. Ann. § 99–17–1 must successfully demonstrate that the challenged delay caused prejudice to his trial defense in order to receive relief. *See*, *e.g.*, *McBride*, 61 So.3d at 147. However, the U.S. Supreme Court has made it clear that the *Barker* prejudice factor can be presumed in some cases. *Doggett*, 505 U.S. at 657–58, 112 S.Ct. 2686.  Indeed, the U.S. Supreme Court emphasized in both *Barker* and *Doggett* that "'impairment of one's defense is the *most difficult* form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686 (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. 2182) (emphasis added). Nevertheless, while the Court has concerns about the state statute as interpreted, it need not address the question of whether the *Walton* test is constitutional in this case.

The Court begins with the Mississippi Supreme Court's holdings.[7] The Mississippi Supreme Court has consistently held, in no uncertain terms, that the Sixth Amendment speedy trial determination is "made apart" from the *Walton* test. *See Franklin v. State*, 136 So.3d 1021, 1032 (Miss. 2014) (citation omitted) ("An analysis of Franklin's constitutional right to a speedy trial must be made apart from his statutory right.").[8] Similarly, the Mississippi Supreme Court has held that "[w]hen considering an alleged violation of a defendant's [constitutional] right to a speedy trial, this Court applies the four-part test developed by the United States Supreme Court in

---

[7] Several cases referencing Miss. Code. Ann. § 99–17–1 have no relevance here. *See Howell v. State*, 163 So.3d 240, 254–55 n.3 (Miss. 2014); *Myers v. State*, 145 So.3d 1143, 1150–52 (Miss. 2014); *Golden v. State*, 968 So.2d 378, 387–88 (Miss. 2007); *Jones v. State*, 962 So.2d 1263, 1278–79 (Miss. 2007) (Diaz, J. dissenting); *Miller v. State*, 956 So.2d 221, 225 (Miss. 2007); *Duncan v. State*, 939 So.2d 772, 776–77 (Miss. 2006).

[8] *See also Murray v. State*, 967 So.2d 1222, 1229 (Miss. 2007); *Simmons v. State*, 678 So.2d 683, 686 (Miss. 1996); *Bailey v. State*, 463 So.2d 1059, 1062 (Miss. 1985).

*Barker*[.]" *See, e.g., Bateman v. State*, 125 So.3d 616, 638–29 (Miss. 2013).[9] Likewise, the Mississippi Supreme Court has not hesitated to consider and apply the *Doggett* presumptive prejudice test where appropriate. *See, e.g., Johnson v. State*, 68 So.3d 1239, 1244 (Miss. 2011) ("[A]n affirmative demonstration of prejudice is not [always] necessary to prove a denial of the constitutional right to a speedy trial[.]") (citation omitted). In short, the Mississippi Supreme Court has correctly identified the appropriate constitutional test and specified that a Sixth Amendment claim is addressed separately from a statutory claim.

Consistent with its holdings, the Mississippi Supreme Court has consistently *addressed* the Sixth Amendment speedy-trial right as a distinct claim on appeal, unencumbered by the *Walton* test. *See, e.g., Bailey v. State*, 78 So.3d 308, 321 (Miss. 2012).[10] For example, the Court has not hesitated to address a Sixth Amendment speedy trial claim first when it is raised alongside a statutory claim. *See, e.g., Hurst v. State*, 195 So.3d 736, 741 (Miss. 2016).[11] Likewise, the Mississippi Supreme Court has routinely applied the *Barker* factors where a defendant only raised a Sixth Amendment speedy trial claim on appeal, s*ee, e.g., Ben v. State*, 95 So.3d 1236, 1245–47 (Miss. 2012),[12] and applied the *Walton* test where only a statutory speedy trial claim is raised, *see, e.g., Flora v. State*, 925 So.2d 797, 819 (Miss. 2006),[13] reflecting the independent consideration given to each type of claim. Indeed, the Mississippi Supreme Court has construed a

---

[9] *See also Franklin*, 136 So.3d at 1032; *Hicks v. State*, 812 So.2d 179, 186 (Miss. 2002).

[10] *See also Thomas v. State*, 48 So.3d 460, 474 n.1 (Miss. 2010); *Jenkins v. State*, 947 So.2d 270, 275–76 (Miss. 2006); *Manix v. State*, 895 So.2d 167, 173–77 (Miss. 2005); *Poole v. State*, 826 So.2d 1222, 1228–30 (Miss. 2002); *Brengettcy v. State*, 794 So.2d 987, 991–95 (Miss. 2001); *Brown v. State*, 749 So.2d 82, 86–87 (Miss. 1999); *Coleman v. State*, 725 So.2d 154, 155–58 (Miss. 1998); *Brewer v. State*, 725 So.2d 106, 117–20 (Miss. 1998); *Kolberg v. State*, 704 So.2d 1307, 1318–20 (Miss. 1997); *Herring v. State*, 691 So.2d 948, 953–56 (Miss. 1997); *Hull v. State*, 687 So.2d 708, 728–30 (Miss. 1996).

[11] *See also Stark v. State*, 911 So.2d 447, 449–53 (Miss. 2005); *Hersick v. State*, 904 So.2d 116, 121–25 (Miss. 2004); *Ginn v. State*, 860 So.2d 675, 683–84 (Miss. 2003); *Wheeler v. State*, 826 So.2d 731, 737–38 (Miss. 2002); *Reynolds v. State*, 784 So.2d 929, 933 (Miss. 2001); *Skaggs v. State*, 676 So.2d 897, 900–2 (Miss. 1996).

[12] *See also Price v. State*, 898 So.2d 641, 647–48 (Miss. 2005); *Young v. State*, 891 So.2d 813, 816–19 (Miss. 2005); *Jefferson v. State*, 818 So.2d 1099, 1105–8 (Miss. 2002); *Humphrey v. State*, 759 So.2d 368, 374–78 (Miss. 2000); *Mitchell v. State*, 792 So.2d 192, 212–13 (Miss. 2001); *Watts v. State*, 733 So.2d 214, 234–36 (Miss. 1999); *State v. Shumpert*, 723 So.2d 1162, 1165–66 (Miss. 1998); *Wall v. State*, 718 So.2d 1107, 112–13 (Miss. 1998); *DeLoach v. State*, 722 So.2d 512, 516–18 (Miss. 1998).

[13] *See also Duplantis*, 708 So.2d at 1334–36; *Guice v. State*, 952 So.2d 129, 139 (Miss. 2007); *Drake v. State*, 800 So.2d 508, 514 (Miss. 2001).

mischaracterized statutory speedy trial claim as a Sixth Amendment claim on occasion. *See*, *e.g.*, *Stevens v. State*, 808 So.2d 908, 915 (Miss. 2002).[14]

Finally, the Mississippi Supreme Court has identified at least two distinctions between Miss. Code. Ann. § 99–17–1, as interpreted, and the Sixth Amendment speedy trial right. First, while the *Walton* test involves "an exact mathematical computation of days," the Sixth Amendment test utilizes a "weighing test" under the *Barker* factors. *Sharp*, 786 So.2d at 380. Additionally, while the Sixth Amendment speedy trial right attaches at arrest, indictment, or other formal accusation, the statutory right only attaches at the time of arraignment or the waiver thereof. *Price*, 898 So.2d at 647–48 n.1.

Notwithstanding the Mississippi Supreme Court's general adherence to its well-developed caselaw, the Court has failed to keep these analyses, and, by extent, these claims, separate on at least one occasion. *See Scott v. State*, 8 So.3d 855 (Miss. 2008). In *Scott*, the Court collapsed its statutory and Sixth Amendment speedy trial analyses into a single analysis. *Id.* at 863. The Court's analysis constantly switched between statutory and constitutional considerations, leaving this Court without confidence that the defendant's Sixth Amendment claim was treated separately from his statutory claim. *Ibid.* While the Court considers *Scott* to be an outlier case,[15] *Scott* is an example of a case where the claims overlapped.

In the present case, the Mississippi Court of Appeals addressed Collins' statutory and Sixth Amendment speedy trial claims as distinct claims on appeal. *Collins*, 232 So.3d at 744. Cf. *Scott*, 8 So.3d at 863. The panel addressed Collins' statutory speedy trial claim first. *Collins*, 232 So.3d at 744. After observing that Collins did not raise his statutory right for more than three years

---

[14] *See also Shumpert*, 723 So.2d at 1165–66.

[15] The Court considers *Scott* to be an outlier case for two reasons. First, in *Scott*, the Mississippi Supreme Court did not indicate that it intended to radically shift its analytical approach. *Scott*, 8 So.3d at 863. Instead, the Court simply blurred the analyses without comment. *Ibid.* Second, the Court deviated from this analysis in numerous cases before and after without further comment.

following his arraignment, the panel concluded that Collins waived his statutory claim by waiting too long to raise it at the trial level. *Ibid.* Thereafter, the panel moved to Collins' Sixth Amendment speedy trial claim in a separately labelled section. *Id.* at 744–46. After correctly identifying the *Barker* factors, the panel considered each *Barker* factor individually and then proceeded to weigh the factors collectively. *Ibid.* The panel concluded that the State did not violate Collins' Sixth Amendment speedy trial right. *Ibid.* Ultimately, while the question of whether the Mississippi Court of Appeals' application of the *Barker* factors was objectively reasonable will be addressed separately below, the panel followed the Mississippi Supreme Court's established precedent and addressed Collins' statutory and Sixth Amendment speedy trial claims separately on appeal.

At this juncture, the question arises: If the *Walton* test did not preclude Collins from adequately pursuing his Sixth Amendment speedy trial right in state court, what relief can the Court grant to Collins by striking down the *Walton* test?[16]

In the Sixth Amendment speedy trial context, a constitutional injury is determined by applying a fact-sensitive balancing test, making a violation typically determinable only on a case-by-case basis. *Barker*, 407 U.S. at 533–34, 92 S.Ct. 2182. The fact-sensitive nature of this constitutional injury does not create issues in the federal system, for example, because the federal Speedy Trial Act expressly preserved the right to pursue a Sixth Amendment speedy trial claim. 18 U.S.C. § 3173. Indeed, the federal courts of appeal have recognized that there may be an "unusual case"

---

[16] For purposes of clarity, the Court highlights that it is referring to a "constitutional injury" as an element of a constitutional claim, not the Article III, § 2 "injury-in-fact" standing requirement. While standing and failure to state claim analyses may look similar, or even the same, in certain instances, they are distinct in nature. *See, e.g.*, *Bond v. United States*, 564 U.S. 211, 216–17, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011). For example, a plaintiff fails to state a Fourth Amendment excessive force claim by failing to show more than a *de minimis* injury, *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017), but this does not mean he *lacked standing* to raise that claim, *Villanueva v. California*, 986 F.3d 1158, 1165 n.5 (9th Cir. 2021).

Here, Collins certainly has Article III standing to challenge the conviction for which he is currently incarcerated. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). While Collins has an injury-in-fact for purposes of standing (his incarceration), a constitutional injury is an element of a constitutional claim. *See, e.g.*, *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (noting that the absence of a constitutional injury equates a failure to state a claim). *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Premier–Pabst Sales Co. v. Grosscup*, 298 U.S. 226, 227, 56 S.Ct. 754, 80 L.Ed. 1155 (1936). Here, Collins' failure to state a claim looks similar to a lack of standing.

where a speedy trial violation is *not* found under the Speedy Trial Act but exists under the Sixth Amendment. *See*, *e.g.*, *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002) (collecting cases).[17] None have, however, questioned the constitutionality of the Speedy Trial Act on this basis because, simply stated, "Sixth [A]mendment challenges *receive separate review distinct* from the Speedy Trial Act[,]" *Thirion*, 813 F.2d at 154 (emphasis added) (citing *United States v. Gonzalez*, 671 F.2d 441, 442–43 (11th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 994, 73 L.Ed.2d 1271 (1982)), though the analyses are "obviously related[,]" *Gonzalez*, 671 F.2d at 442–43 (citing *United States v. Edwards*, 577 F.2d 883, 887 n.1 (5th Cir.) (en banc), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978)). Unlike in the federal system, the Mississippi legislature did not address whether Miss. Code Ann. § 99–17–1 precluded defendants from pursuing an independent Sixth Amendment speedy trial claim in Mississippi state court.[18] Nevertheless, as the Court's above review demonstrates, the Mississippi Supreme Court has filled this gap with its holdings that the Miss. Code Ann. § 99–17–1 and Sixth Amendment speedy trial claims are distinct claims on appeal, *Franklin*, 136 So.3d at 1032, and applying them as such, *McBride*, 61 So.3d at 142–48.

With the above in mind, the Court turns back to Collins' claim. Collins argues that the *Walton* test is *itself* "more draconian" or "stricter" than the *Barker* factors, and, therefore, it unconstitutionally encroaches on his Sixth Amendment speedy trial right. Doc. [3], at 5–7. However, Collins' argument is premised on the unstated assumption that the *Walton* test *infringed* on his Sixth Amendment speedy trial right in Mississippi state court. This unstated assumption is the fatal flaw in his legal theory. As demonstrated above, there is no indication that the *Walton* test

---

[17] *See also United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014) (collecting cases); *United States v. DeJesus*, 887 F.2d 114, 116 (6th Cir. 1989); *United States v. Bloom*, 865 F.2d 485, 491 (2d Cir. 1989); *United States v. Thirion*, 813 F.2d 146, 154 (8th Cir. 1987); *In re Grand Jury Investigation*, 600 F.2d 420, 427 n.26 (3d Cir. 1979).

[18] At only one sentence in length, Mississippi's speedy trial legislation does not state much.

itself precluded Collins from fully pursuing his Sixth Amendment speedy trial right in state court, either in general or as applied to his case. Since the *Walton* test did not preclude Collins from fully pursuing his Sixth Amendment speedy trial right in Mississippi state court, the test itself does not infringe on that right. Stated differently, even if the Court struck down the *Walton* test, Collins' Sixth Amendment speedy trial right would remain unaffected on the present facts. Cf. *Scott*, 8 So.3d at 863. The absence of an infringement on Collins' constitutional rights under his legal theory means that he has failed to demonstrate that he suffered a constitutional injury and, therefore, failed to state a claim upon which relief can be granted. *See, e.g., Bustos*, 599 F.3d at 467. This claim fails.

### C.  Section 2254(d)

Collins' remaining three claims were adjudicated on the merits in state court. *See, e.g., Salazar v. Dretke*, 419 F.3d 384, 395 (5th Cir. 2005). Since Collins' remaining claims can only avoid the relitigation bar through Section 2254(d)(1),[19] he must demonstrate that the state court's adjudication of those claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Furthermore, the Court reviews the "last reasoned state-court decision" on Collins' remaining three claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 806, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). In the present case, Collins' three remaining claims were raised in a nearly identical fashion before the Mississippi Court of Appeals and Mississippi Supreme Court. However, the Mississippi

---

[19] At most, Collins makes one muddled reference to the relitigation bar and only in his reply brief. Doc. [10]. Cf. Doc. [1, 3]. In turn, the Court briefly analyzes whether Collins' arguments arise under Section 2254(d)(1) or (2) or both. Under Fifth Circuit precedent, claims involving questions of law and mixed questions of law and fact are determined under Section 2254(d)(1). *See, e.g., Dickson v. Quarterman*, 462 F.3d 470, 476 (5th Cir. 2006) (citation omitted). Here, Collins' *Apprendi* challenge is a question of law and his Sixth Amendment speedy trial as well as weight of the evidence claims are mixed questions of law and fact; all claims are, therefore, considered under Section 2254(d)(1). *See, e.g., Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011); *Parker v. Cain*, 445 F. Supp. 2d 685, 700 (E.D. La. 2006).

Supreme Court summarily denied Collins' claims both on direct and collateral appeal. *See* Doc. [9], Ex. 5, at 3; Ex. 6, at 3. As the Mississippi Court of Appeals' decision on direct appeal was the last "reasoned decision" on Collins' three remaining claims, the Court "looks through" the Mississippi Supreme Court's summary denials of his claims to the Mississippi Court of Appeals' decision. *Ylst*, 501 U.S. at 806, 111 S.Ct. 2590.

### D.  Sixth Amendment Speedy Trial Right

Since the Mississippi Court of Appeals correctly identified the *Barker* framework for analyzing Collins' Sixth Amendment speedy trial claim, *Collins*, 262 So.3d at 744–46, the Court's review is limited to whether the panel "unreasonabl[y] appli[ed]" the *Barker* factors, *Boyer*, 863 F.3d at 442. In reviewing the Mississippi Court of Appeals' decision, the Court undertakes a "limited review" of the panel's analysis of each *Barker* factor in order to "facilitate" its determination of the reasonableness of the state court's ultimate decision. *Id.* (quoting *Goodrum*, 547 F.3d at 257). Even if the state court's preliminary conclusion about one *Barker* factor is "contrary to or objectively unreasonable in light of controlling Supreme Court precedent," this is insufficient to grant habeas relief so long as the Court finds "the ultimate decision reached by the state court not [to be] objectively unreasonable." *Id.* at 444–45 (quotation omitted). As the general *Barker* framework has already been set forth above in detail, the Court moves directly to consideration of the Mississippi Court of Appeals' application of those factors.

### i.    Length of Delay

The Court begins with the "length of delay" factor, which performs two functions. *Amos*, 646 F.3d at 205. First, the factor acts as the gatekeeping or "triggering" mechanism for consideration of the other factors. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. To trigger a "full" analysis, the defendant must demonstrate that the delay at issue "has crossed the threshold' that separates

ordinary delay from 'presumptively prejudicial' delay.'" *Amos*, 646 F.3d at 206 (quotation omitted). The relevant "delay" period considered runs from the date of arrest, indictment, or other "formal accusation" to the date of conviction. *Betterman v. Montana*, ⎯⎯ U.S. ⎯⎯, 136 S.Ct. 1609, 1613–14, 194 L.Ed.2d 723 (2016). While the "presumptively prejudicial" date is not set in stone, the federal courts have routinely concluded that delay becomes presumptively prejudicial around the one-year mark. *Doggett*, 505 U.S. at 652 n.1, 112 S.Ct. 2686. If the petitioner overcomes the first factor's gatekeeping function, the Court considers the first factor "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652, 112 S.Ct. 2686.

Neither party disputes the Mississippi Court of Appeals' analysis of this factor. Here, Collins was arrested on December 14, 2011, Doc. [9], Ex. 6, at 17–18. He was convicted as a felon in possession on February 25, 2016. *Id.*, Ex. 1, 87–88. A period of 1,535 days, or about 4 years and 2 months, passed between his arrest and conviction. *Betterman*, 136 S.Ct. at 1613–14. Therefore, the Mississippi Court of Appeals' conclusion that the delay was presumptively prejudicial and triggered a further inquiry was not objectively unreasonable. *Collins*, 232 So.3d at 745. Likewise, the panel's conclusion that this factor weighed in Collins' favor was not objectively unreasonable. *Barker*, 407 U.S. at 533, 92 S.Ct. 2182

### ii.     Reasons for the Delay

Under the second factor, the Court addresses the reasons for the delay. Under *Barker*, "different weights" are given to "different reasons" for delay. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.  On one end, if the State "deliberate[ly] attempt[s]" to delay the trial in order to "hamper the defense[,]'" *Vermont v. Brillon*, 556 U.S. 81, 90, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009) (quotation omitted), this factor will be weighed "heavily" in favor of the defendant, *Doggett*, 505

U.S. at 656, 1125 S.Ct. 2686. On the other hand, if the State can demonstrate that a given delay is justified by setting forth "a valid reason," *Barker*, 407 U.S. at 531, 92 S.Ct. 2182, such as "collect[ing] witnesses against the accused, oppos[ing] his pretrial motions, or, if he goes into hiding, track[ing] him down[,]" *Doggett*, 505 U.S. at 656, 112 S.Ct. 2686, then the delay is not chargeable to the State, *Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182. Similarly, delays attributable to the defendant are not charged to the State. *Brillon*, 556 U.S. at 90, 129 S.Ct. 1283. However, delays that fall in the "middle ground" between diligence and bad faith demonstrate "negligent prosecution." *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007) (citing *Serna-Villarreal*, 352 F.3d at 232). While prosecutorial negligence is weighed "more lightly" than bad faith, it still falls on the "wrong side" of the line between "acceptable and unacceptable reasons" for delaying an ongoing prosecution. *Doggett*, 505 U.S. at 657, 112 S.Ct. 2686. While negligence is weighed more lightly, a court's "toleration of such negligence varies inversely with its protractedness[.]" *Id.* (citation omitted). Still, negligence without "particularized" trial prejudice must last much longer than negligence that "demonstrably causes" such prejudice. *Parker*, 505 F.3d at 329.

In his petition, Collins argues that the roughly 2 years and 2 months between his murder and felon-in-possession convictions were attributable to the State. Doc. [3], at 8. Collins continues that the State acted in bad faith by delaying his felon-in-possession trial because it "simply assumed" that his murder conviction would be upheld and only decided to "pull the [w]eapons charge out of its pocket" for a "sure bet of conviction" when the murder conviction was reversed. *Id.*, at 8–9.[20] As such, Collins argues, this factor should have weighed very heavily against the State. *Ibid.*

Here, the Mississippi Court of Appeals' conclusion that the second *Barker* factor weighed against the State, but not heavily, was not objectively unreasonable. *Collins*, 232 So.3d at 745. The

---

[20] Collins concedes here, as in state court, that the period between his initial arrest and first murder conviction is "neutral." Doc. [3], at 8. In turn, the Court's present inquiry is limited to the period between his murder and felon-in-possession convictions.

Court begins by addressing Collins' bad faith argument. Doc. [3], at 9. In the Sixth Amendment speedy-trial context, "bad faith" is not a free-floating concept attached to any conscious State decision to delay bringing a defendant to trial. Instead, "bad faith" focuses more narrowly on whether the State undertook a "deliberate attempt to delay the trial *in order to hamper the defense*." *Loud Hawk*, 474 U.S. at 315, 106 S.Ct. 648 (emphasis added) (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. 2182). Since *Barker*, the dividing line between negligence and bad faith has been clearly demarcated by whether the State intended to hamper the defense at trial in some way. *See Brillon*, 556 U.S. at 91, 129 S.Ct. 1283; *Doggett*, 505 U.S. at 656–57, 112 S.Ct. 2686; *Loud Hawk*, 474 U.S. at 315, 106 S.Ct. 648; *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.[21] Under the appropriate definition of "bad faith," the State's decision not to try Collins on the felon-in-possession charge on the grounds that it "simply assumed" the murder conviction would be affirmed was not bad faith because, by taking this approach, the State had no intent to hamper Collins' defense. *Loud Hawk*, 474 U.S. at 315, 106 S.Ct. 648. Likewise, even if the State hoped to save resources by having the murder conviction affirmed, the same result would follow—there was no bad faith because there was no intent to hamper Collins' defense. *Ibid.*

Nevertheless, the State's murder conviction gamble did not leave it free and clear of responsibility to try Collins, as the Mississippi Court of Appeals accurately pointed out. *Collins*, 232 So.3d at 745. Rejecting the State's arguments that (i) Collins effectively brought the delay on himself by successfully severing his charges and (ii) considerations of "judicial economy" favored waiting, the panel correctly identified that the State ultimately bore the burden of bringing Collins to trial on the felon-in-possession charge, even though he was already imprisoned, and was also

---

[21] *See also United States v. Frye*, 372 F.3d 729, 737–38 (5th Cir. 2004) (finding that government's intentional trial delay in order to prepare death penalty charge, despite claims in court to the contrary when requesting continuances, was only negligence in speedy trial context because there was no "willful hampering" of the defense).

responsible for justifying for any delay. *Id.* at 745–46. It was not objectively unreasonable for the panel to reject these arguments. For one, since both charges arose in the same Mississippi state court, nothing prevented the State from bringing Collins to trial on the felon-in-possession charge while his murder charge was pending on appeal aside from the preference to save resources. Cf. *United States v. Nixon*, 919 F.3d 1265, 1270–71 (10th Cir. 2019) (finding delay in federal case justified by wait for resolution of state court charges). Indeed, the State retried Collins on the murder charge shortly after he was convicted of being a felon in possession and while that conviction was pending on direct appeal. Likewise, while resource considerations do not constitute *bad faith*, the State certainly cannot rely on resource constraints to *justify* a period of delay. *See*, *e.g.*, *Barker*, 407 U.S. at 531, 92 S.Ct. 2182 (court congestion weighs against State); *Boyer*, 863 F.3d at 444 (lack of funding of public defender's office leading to trial delay weighed against State). By the same token, the panel's rejection of the State's extreme argument that, by severing his charges, Collins brought any and all delay on himself was not objectively unreasonable. Indeed, under the State's reasoning, Collins would have to choose between being unable to succeed under the second *Barker* factor by severing his charges, which is the "flag that all defendants seek to capture," *Boyer*, 863 F.3d at 444 (quoting *Loud Hawk*, 474 U.S. at 315, 106 S.Ct. 648), or knowingly risk significant prejudice at trial by not pursuing severance. For these reasons, the Mississippi Court of Appeals' decision to weigh the second factor against the State, but not heavily because its conduct was merely negligent, was not objectively unreasonable.

### iii.    Collins' Assertion of His Right

Next, a reviewing court considers the petitioner's assertion of his speedy trial right. The reviewing court focuses on whether, and, if so, how often and how forcefully the defendant asserted his speedy trial right. *Loud Hawk*, 474 U.S. at 314, 106 S.Ct. 648. Furthermore, a

petitioner's assertion of his speedy trial right also must be viewed alongside his other conduct, *ibid.*, such as the time at which he first asserts that right, *Divers v. Cain*, 698 F.3d 211, 219 (5th Cir. 2012). If the petitioner manifests a strong desire to be brought to trial, he is entitled to "strong evidentiary weight" in the Court's determination of whether he was deprived of his speedy-trial right, *Barker*, 407 U.S. at 531–32, 92 S.Ct. 2182, but his failure to assert that right "will make it difficult for . . . [him] to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. 2182.

Collins only argues that the Court should give this factor little weight because the facts of his case are "unique." Doc. [3], at 9–10. Here, Collins filed a single motion to dismiss the felon-in-possession charge on speedy-trial grounds more than three years after his December 14, 2011 arrest. Doc. [9], Ex. 1, at 28–30. Even if the Court liberally construes Collins' motion to dismiss as an assertion of his speedy trial right, cf. *Barker*, 407 U.S. at 528–30, 92 S.Ct. 2182; *United States v. Frye*, 489 F.3d 201, 211–12 (5th Cir. 2007), Collins' own delay in asserting the right was quite significant. Prior to his October 15, 2015 filing, Collins did not demonstrate any interest in going to trial on his felon-in-possession charge. Indeed, Collins only moved to dismiss that charge after his murder conviction was reversed on appeal. Doc. [9], Ex. 1, at 28–30. However, nothing prevented Collins from demanding to be brought to trial on the felon-in-possession charge during the pendency of that appeal. Furthermore, Collins cannot plausibly claim that his circumstances are unique under this factor because he was well aware of the pending felon-in-possession charge and successfully moved the state trial court to sever that charge years ago. Cf. *Doggett*, 505 U.S. at 653, 112 S.Ct. 2686 (reasoning that defendant's failure to assert his speedy trial right earlier was due to his lack of awareness about the existence of the charge); *United States v. Molina-Solorio*, 577 F.3d 300, 306 (5th Cir. 2009) (same). Thus, it was not objectively unreasonable for the

Mississippi Court of Appeals to weigh this factor against him. *Barker*, 407 U.S. at 534, 92 S.Ct. 2182.

Before turning to the prejudice prong, the Court considers whether the Mississippi Court of Appeals erred by failing to conclude that Collins was entitled to a presumption of prejudice. Absent error, the panel's failure to expressly discuss *Doggett* presumptive prejudice is immaterial to this Court's review. *Boyer*, 863 F.3d at 441–46. As addressed above, the panel reasonably concluded that the first factor weighed heavily and the second factor less heavily in Collins' favor. *Collins*, 262 So.3d at 746. However, the panel also reasonably concluded that the third factor weighed heavily against him. *Ibid.* Thus, it was not objectively unreasonable for the panel to require Collins to demonstrate prejudice. *Doggett*, 505 U.S. at 658, 112 S.Ct. 2686. *See also Parker*, 505 F.3d at 328–29.

### iv.    Prejudice

Under the fourth *Barker* factor, the Court considers the prejudice to the defendant. *Barker*, 407 U.S. at 531–32, 92 S.Ct. 2182. The prejudice prong must be reviewed in light of the "interests of defendants which the speedy trial right was designed to protect," which include: (i) "prevent[ing] oppressive pretrial incarceration;" (ii) "minimiz[ing] anxiety and concern of the accused;" and (iii) "limit[ing] the possibility that the defense will be impaired." *Id.* at 532, 92 S.Ct. 2182. The third interest is the "most serious" because a defendant's "inability . . . [to] adequately [] prepare his case skews the fairness of the entire system." *Doggett*, 505 U.S. at 654, 112 S.Ct. 2686 (quotation omitted). Finally, the defendant carries the burden at this prong. *Barker*, 407 U.S. at 533–34, 92 S.Ct. 2182. *See also United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009).

Here, Collins does not present any prejudice and, instead, argues that he is entitled to a presumption of prejudice under *Doggett*. Doc. [3], at 10. However, the first three factors did not

weigh heavily in his favor, *Doggett*, 505 U.S. at 655, 112 S.Ct. 2686. *See also Serna-Villarreal*, 352 F.3d at 230–31, and the length of delay was less than five years, *see*, *e.g.*, *Parker*, 505 F.3d at 328–29, so Collins was required to identify prejudice. However, Collins failed to identify any specific prejudice that he suffered beyond those concerns inherent in the length of delay. Doc. [9], Ex. 4, at 19. As a result, the Mississippi Court of Appeals' conclusion that this factor weighed against Collins was not objectively unreasonable. *Barker*, 407 U.S. at 534, 92 S.Ct. at 2182.

### v.      Full Analysis

Finally, the Court considers the objective reasonableness of the Mississippi Court of Appeals' ultimate conclusion that, in balancing all of the *Barker* factors, Collins failed to establish a violation of his speedy trial right. *Boyer*, 863 F.3d at 443. Here, the panel weighed the first and second factors against the State. *Collins*, 232 So.3d at 746.  As the panel identified, however, Collins failed to assert his speedy trial right for more than three years, only raising his speedy trial right on one occasion during that period. *Barker*, 407 U.S. at 534–35, 92 S.Ct. 2182. Similarly, Collins failed to demonstrate any prejudice whatsoever in the present case. *Ibid.* Ultimately, having reviewed the record in light of all four *Barker* factors, the Court concludes that the Mississippi Court of Appeals' decision was not objectively unreasonable. *White*, 572 U.S. at 419–20, 134 S.Ct. 1697.

### E.  Sufficiency of the Evidence

### i.   Law

When a petitioner challenges the sufficiency of the evidence that supports his conviction under the federal constitution, he is bringing a *Jackson* claim. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[22] Under *Jackson*, "evidence is sufficient to support a conviction so

---

[22] The respondent argues that, while Collins exhausted his "weight of the evidence" claim, there is no such claim cognizable on federal habeas review from state court. As a general matter, the respondent is correct. *See*, *e.g.*, *McKinnon v. Superintendent, Great*

long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Cavazos v. Smith*, 565 U.S. 1, 7, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011) (per curiam) (quotation omitted). The Court looks to state law to determine the substantive elements of the challenged offense. *Coleman v. Johnson*, 566 U.S. 650, 651–55, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (considering state statute as interpreted by state court). When reviewing a *Jackson* claim, the Court must "preserve" the jury's role in weighing the evidence and, thus, review all of the evidence "in the light most favorable to the prosecution[.]" *McDaniel v. Brown*, 558 U.S. 120, 134, 130 S.Ct. 665, 175 L.Ed.2d 582 (2010) (quotation omitted). Finally, a witness credibility assessment is "generally beyond the scope of [habeas] review[,]" *Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and conflicting inferences are presumed to have been resolved in favor of the prosecution, "even if it does not affirmatively appear in the record[,]" *McDaniel*, 558 U.S. at 133, 130 S.Ct. 665.

### ii. Application

The Court begins by considering the applicable Mississippi state law to determine the substantive elements of the challenged offense. *Johnson*, 566 U.S. at 651–55, 132 S.Ct. 2060. The applicable statute is Miss. Code Ann. § 97–37–5(1). *Ibid.* In order to prove that a defendant is a felon in possession of a firearm, the State must prove that he (1) "was in possession of a firearm," and (2) was previously "convicted of a felony crime." *Henderson v. State*, 117 So.3d 636, 638 (Miss. Ct. App. 2013) (quotation omitted); Miss. Code Ann. § 97–37–5(1). Possession of a firearm may be actual or constructive, *Affleck v. State*, 210 So.3d 1067, 1080–81 (Miss. Ct. App. 2015),

---

*Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). After all, Collins' "weight of the evidence" claim is a creature of state law. *See, e.g.*, *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470–71 (S.D.N.Y. 2006). Nevertheless, in the alternative, the Court will address the substance of Collins' claim as a sufficiency of the evidence claim.

and can be established through eyewitness testimony placing the firearm in the defendant's hands, *Jordan v. State*, 212 So.3d 836, 849 (Miss. Ct. App. 2015). Finally, the firearm must merely be usable. *Compare Cooley v. State*, 14 So.3d 63 (Miss. Ct. App. 2008), *with Burnside v. State*, 62 So. 420 (Miss. 1913).

Whether reviewed *de novo* or under AEDPA, the Court concludes that there was sufficient evidence to convict Collins. First, Collins stipulated to being a convicted felon prior to trial, meeting this element. Doc. [9], Ex. 2 (T. 104). Next, turning to the "possession of a firearm" prong, Miles provided testimony that he handed over a gun to Collins that was operable, albeit with a jamming issue, and Collins took possession of the gun. *Id.*, Ex. 3 (Miles T. 120, 128). Miles testimony was "sufficient" evidence for a rational juror to conclude that Collins possessed the Hi-Point gun. *Jordan*, 212 So.3d at 849. Nevertheless, the State provided additional evidence: (i) Joshia and Melven saw a bag in the Dodge; (ii) Joshia testified that he stopped with Collins around the Vossburg area for unspecified reasons; (iii) Joshia accompanied the HPD to the Vossburg exit area; and (iv) the HPD recovered a gun there that was later traced, via its serial number back, to Miles. For these reasons, a rational jury could certainly conclude that Collins possessed the Hi-Point gun and, later, abandoned the gun. *McDaniel*, 558 U.S. at 133, 130 S.Ct. 665.[23]

### F.  Habitual Offender Statute

#### i.  Law

Finally, Collins claims that the Mississippi habitual offender statute, *see* Miss. Code Ann. § 99–19–83, violates *Apprendi*, Doc. [3], at 12–13. This claim is without merit.

---

[23] Collins also identifies two U.S. Supreme Court cases that, he claims, support his position. Doc. [3], at 10–12. In *Vachon v. New Hampshire*, the Supreme Court reversed a state conviction because the prosecution failed to present *any* evidence whatsoever as to an element of the relevant criminal offense. 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974). In *Fiore v. White*, the Supreme Court reversed a state conviction where the defendant was convicted under a reading of the pertinent criminal statute later rejected by the state supreme court. 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001). These cases have no application here.

In *Almendarez-Torres v. United States*, the U.S. Supreme Court held that a prior conviction is a sentencing factor that may be found by a court even if it results in a sentence higher than the prescribed statutory maximum. 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Reinforcing *Almendarez-Torres*, the Supreme Court later explained that "unlike virtually any other consideration used to enlarge the possible penalty for an offense," a prior conviction "must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Jones v. United States*, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Any doubt about whether *Almendarez-Torres*'s central holding survived *Apprendi* was addressed by the Supreme Court in *Apprendi* itself, *see Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be . . . proved beyond a reasonable doubt [by a jury]."), and again in *Alleyne v. United States*, 570 U.S. 99, 111 n.1, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) ("In *Almendarez–Torres* . . . we recognized a narrow exception to this general rule for the fact of a prior conviction . . . ."). While a prior conviction need not be proved beyond a reasonable doubt, the State must still, however, establish the defendant's prior conviction or convictions by a preponderance of the evidence. *United States v. O'Brien*, 560 U.S. 218, 224, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010) (citation omitted). In short, a jury need not find the fact of a prior conviction beyond a reasonable doubt *even if* that sentencing factor results in a conviction longer than the prescribed statutory maximum for the underlying offense, *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348; the sentencing court need only find that fact by a preponderance of the evidence, *O'Brien*, 560 U.S. at 224, 130 S.Ct. 2169.[24]

---

[24] Here, Collins does not dispute that the state trial court's findings were supported by a preponderance of the evidence.

### ii. Application

Here, the Mississippi Court of Appeals' decision was not contrary to *Apprendi*. 28 U.S.C. §

2254(d)(1). Collins was convicted of being a felon in possession of a firearm beyond a reasonable

doubt by a jury. *See* Doc. [9], Ex. 1, at 87–88. The felon-in-possession statute carries a maximum

sentence of ten-years imprisonment. *See* Miss. Code Ann. § 97–37–5(2). Nevertheless, since

Collins was also indicted as a habitual offender, he was exposed to a sentence higher than the

prescribed statutory maximum for a felon in possession—i.e., life imprisonment without the

possibility of parole. *See* Miss. Code Ann. § 99–19–83. Miss. Code Ann. § 99–19–83 is a

recidivism statute that provides that certain repeat offenders can receive a sentencing enhancement

based on their prior convictions. *See*, *e.g.*, *Keyes v. State*, 549 So.2d 949, 951 (Miss. 1989). Since

Miss. Code Ann. § 99–19–83 is a recidivism statute premised on Collins' prior convictions, the

statute falls within the prior conviction exception. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. For

these reasons, Collins' claim fails.

### RECOMMENDATION

Based on the foregoing, the undersigned recommends that petitioner Jairus Collins' *habeas*

*corpus* petition be dismissed with prejudice.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve

and file written objections within fourteen (14) days after being served with a copy unless the time

period is modified by the District Court.  A party filing objections must specifically identify those

findings, conclusions and recommendations to which objections are being made; the District Court

need not consider frivolous, conclusive or general objections.  Such party shall file the objections

with the Clerk of the Court and serve the objections on the District Judge and on all other parties.

A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 3rd day of August 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE